IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | § | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL DOCKET NO: |
| v. | § | 3:09-CR-294-M |
| | § | |
| HOSAM MAHER HUSEIN SMADI | § | ECF |
| | § | |

**REPLY TO THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION FOR DEPOSITION IN A FOREIGN JURISDICTION WITH AUTHORITIES**

TO THE HONORABLE BARBARA LYNN, UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION:

COMES NOW the defendant, Hosam Maher Husein Smadi, and presents this response to the government's opposition to the defendant's motion to take depositions in a foreign jurisdiction for the purposes of creating and preserving testimony for trial, and for cause would show unto the Court as follows:

A.   Applicable Law:

"Few rights are more fundamental than that of an accused to present witnesses in his defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). This "meaningful right to present a complete defense" arises from both the Due Process Clause and the Compulsory Process Clause of the Sixth Amendment. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The compulsory process clause is designed to secure for the defendant "a meaningful opportunity, at least as advantageous as that possessed by the prosecution, to establish the essential elements of his case." *Taylor v. Illinois*, 484 U.S. 400, 408, n.13 (1988).

Denial of the right to conduct depositions would likely compromise this right. The witnesses

each offer testimony that establishes the essential elements of multiple defensive issues. They show that the defendant was not predisposed to commit the offense, an essential element of an entrapment defense, and show a pattern of mental illness relevant either to an insanity defense, the offense's knowledge element, and to a positional entrapment defense (the inability to have committed the offense without the government's involvement[1]). Further, the government's control over visa restrictions, extradition authority, and sovereign authority to negotiate in foreign policy make a deposition essential to secure the defendant a right to present witnesses that is "at least as advantageous as that possessed by the prosecution."

This court may effectuate Defendant's Sixth Amendment right to present a defense through depositions and it would be in the interest of justice to do so. The government maintains that depositions should be permitted only in "extraordinary circumstances," relying on *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994). Yet *Dillman* and *United States v. Farfan-Carreon*, 935 F.2d 678, 680 (5th Cir. 1991), make clear that this court possesses extensive authority to order depositions even when it would not be reversible error to deny them. *See Dillman*, 15 F.3d at 389 ("The word 'may' signifies that the district court retains **broad discretion** in granting a Rule 15(a) motion and that the court should review these motions on a case-by-case basis")(emphasis added); *accord Farfan-Carreon*, 935 F.2d at 679. Simply put, to hold, as the *Dillman* panel did, that "only in extraordinary cases will depositions be **compelled**" is not at all to hold that only in those circumstances will they **permitted**. *Dillman*, 15 F.3d at 389.

Further, the government exaggerates the showing of unavailability required to show "extraordinary circumstances" under Fifth Circuit law. Notably, the government fails to reproduce

---

[1] *See United States v. Hollingsworth*, 27 F.3d 1196, 1199 (7th Cir. 1994)(*en banc*).

-2-

the critical portion of the *Dillman* opinion immediately following a quoted passage:

> [w]e have held, however, that circumstances such as those confronting us in this case--Finch is an unservable deponent who is unlikely to return to the United States--can be extraordinary.

*Dillman*, 15 F.3d at 389. Indeed, the Fifth Circuit found in *Farfan-Carreon* that a district court abuses its discretion by failing to find extraordinary circumstances when a witness is beyond the court's subpoena power and unlikely to enter the country voluntarily. *See Farfan-Carreon*, 935 F.2d at 680; *see also United States v Korolkov* 870 F Supp 60 (S.D.N.Y. 1994)(foreign deposition proper where material witnesses indicated an unwillingness to leave Jakarta or Buenos Aires)(*citing United States v. Salim*, 855 F.2d 944, 949 (2d Cir. 1988); *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984)). And at least one court has found depositions appropriate even though a witness indicated a willingness to travel because the witness "could change her mind about desiring to travel."*United States v Des Marteau*, 1995 U.S. Dist. LEXIS 18290, 162 FRD 364, (MD Fla 1995).

The government's call for a conclusive showing of unavailability is neither consistent with the defendant's right to present a defense, nor a necessary reading of Rule 15. "It would be unreasonable and undesirable to require [a party][2] to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition." *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985); accord *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993). It should instead be sufficient to show "a substantial likelihood exists that the proposed deponent will not testify at trial." *Drogoul*, 1 F.3d at 1553. At a minimum, the court should allow the parties to preserve testimony upon a minimally sufficient showing of unavailability, subject to "a more concrete showing" at trial as prerequisite to admissibility. *Id.*

---

[2] In the cited cases, the party seeking a deposition was the government.

The government also overstates the rigidity of the materiality requirement. Notably, the *Farfan-Carreon* opinion, which predates *Dillman*, explicitly disavows any materiality requirement associated with Rule 15. *See Farfan-Carreon*, 935 F.2d at 680 ("Although not required by the rule, we note that [the witness's] probable testimony is material . . . ."). It is axiomatic that when two Fifth Circuit panel opinions conflict, the earlier controls. *See United States v. Mask*, 330 F.3d 330, 334-335 (5th Cir. 2003).

In any case, the government overlooks the ultimate holdings of both *Dillman* and *Farfan-Carreon*. In both of those cases, the court found that the testimony sought by the defendant was or could be material. Like the testimony of both relevant witnesses in those cases, the witnesses sought in this case bear directly on the defendant's state of mind. *See Dillman*, 15 F.3d at 389; *Farfan-Carreon*, 935 F.2d at 680 ("...we note that Pilingas' probable testimony is material, since it bears upon Farfan's knowledge of the hidden contents of the truck.").

The government critiques as incomplete the defendant's outline of the witnesses' testimony. Again, however, its call for a conclusive showing of materiality is not grounded in the Rule or the binding precedent that construes that Rule. The Fifth Circuit has explicitly rejected a requirement that defendants show the expected testimony (or unavailability) by sworn document, and has in fact found that a district court abused its discretion by imposing such a requirement. *Farfan-Carreon*, 935 F.2d at 680. Rather, it has held that counsel's representation of the expected testimony and the reasons for unavailability suffice. *See id.*

Not all witnesses listed have been interviewed with regard to availability yet. The defense team has no information that indicates a single witness listed has the necessary travel documents at this point, though some are willing to try to obtain them. Some will not interview by phone, and at

least two lack the financial ability to make the trip. Smadi's goal is not to take depositions, but to ensure the presentation of favorable evidence. Certainly, if a witness is able to come to the trial it would be advantageous and more persuasive for the defense to present live testimony at trial, but at this point it cannot be said that a single witness Smadi seeks to deposed will be available.

      B. <u>Specific unavailability.</u>

1. Essar Mazareh
   She is unavailable. Smadi's defense team has been advised tat she has chosen not to speak to members of the defense team by telephone, but it is anticipated she would be a willing witness for a deposition.

2. Allaa Adel Momani
   Mr. Adel Momani currently has a passport, but is unsure as to when it expires. Allaa does not currently have a visa to the United States, nor has he ever had or applied for a visa to the United States. Although Mr. Adel Momani expressed his willingness to apply for the visa and does not currently foresee any impediments (aside from the visa) to traveling to the United States in June to testify, there is no way to know whether a visa will be issued.

3. Dr. Abdullah Momani
   Dr. Abdullah has not yet been personally interviewed with regard to the particular issue of availability due to time constraints, but efforts are ongoing.

4. Omar Momani
   Omar Momani currently has a passport, but is unsure as to when it expires. Omar does not currently have a visa to the United States, nor has he ever had or applied for a visa to the United States. Mr. Momani expressed his willingness to apply for the visa. Although he does not currently foresee any impediments (aside from the visa) to traveling to the United States in June to testify, there is no way to know whether a visa will be issued.

5. Ghada Qhudah
   Smadi's defense team has not been able to interview Ms. Qhudah. Cultural issues have made it difficult for Smadi's defense team to arrange for interviews with females in Jordan, so far.

6. Deif Allah Rabadi
   Deif Allah Rabadi has not yet been personally interviewed with regard to the particular issue of availability due to time constraints, but efforts are ongoing.

7. Dr. Huda Rabadi

    Smadi's defense team anticipates learning of Dr. Rabadi's availability shortly.

8. Hanna Rabadi

    Smadi's defense team now understands he is in San Jose, California.

9. Mustafa Smadi

    Mustafa Smadi currently has a passport, but is unsure as to when it expires. Mustafa does not currently have a visa to the United States, nor has he ever had or applied for a visa to the United States. Although Mustafa expressed his willingness to apply for the visa. Mustafa does not currently foresee any impediments (aside from the visa) to traveling to the United States in June to testify, there is no way to know whether a visa will be issued.

10. Rama Smadi

    Rama does not currently have a passport or a visa to the United States, nor has she ever had or applied for a passport or a visa to the United States. Rama expressed her willingness to apply for the passport and visa and does not currently foresee any impediments (aside from the visa) to traveling to the United States in June to testify, explaining that school would be on holiday beginning in May, but there is no way to know whether a visa and passport will be issued.

11. Reem Smadi

    Reem does not currently have a passport or a visa to the United States, nor has she ever had or applied for a passport or a visa to the United States. Rama expressed her willingness to apply for the passport and visa and does not currently foresee any impediments (aside from the visa) to traveling to the United States in June to testify, but there is no way to know whether a visa and passport will be issued.

12. Seham Smadi

    Seham currently has a passport, but is unsure as to when it expires. Seham does not currently have a visa to the United States, nor has she ever had or applied for a visa to the United States. Seham expressed her willingness to apply for the visa. Seham's major impediment (aside from the visa) to traveling to the United States to testify in June is financial, as she does not have the money to travel to the United States.

13. Mohamed Zughoul

    Mr. Zughoul does not currently have a passport or a visa to the United States, and though he has expressed his willingness to apply for the passport and visa, money is an impediment.

14. Dr. Ziad Momani

    Dr. Ziad has not yet been personally interviewed with regard to the particular issue

of availability due to time constraints, but efforts are ongoing.

15.   Dr. Hani Rymoni
        Dr. Rymoni has not yet been personally interviewed with regard to the particular issue of availability due to time constraints, but efforts are ongoing.

16.   Hosam Qustan Aayoub
        Hosam has not yet been personally interviewed with regard to the particular issue of availability due to time constraints, but efforts are ongoing

   C. Materiality, cumulativeness.

In the complaint and in the probable cause hearing the government has painted a picture of Hosam Smadi being a person who "stood out" amongst extremists in his "vehement intention to actually conduct terror attacks in the United States," who ultimately knowingly possessed a weapon of mass destruction in an attempt to destroy a building. The defense seeks to prove that the defendant was entrapped. Had this been a real attack, Hosam Smadi would have been redundant to the endeavor (the government provided the vehicle, the fake bomb, and the phones to connect to the fake bomb; if this were a real operation, the defendant would have been of no use.) But the defense has to prove that Smadi was not predisposed to commit this conduct or would not have committed the conduct absent the government's involvement. The defendant seeks to present evidence that Hosam Smadi grew up in a religiously tolerant environment in Ajloun, Jordan; that he went to a Christian school, attended Christian services, sang Christian hymns; that his parents taught him that God loves all people regardless of religions; that Hosam Smadi was not religious and unconcerned with politics; that he began to fall apart emotionally when his father and mother separated and began to exhibit signs of depression and mental illness; that his condition was worsened by other traumatic events; that he completely fell apart when his mother died; that he came to America only to change

environment because he was not recovering from the mental state he was in after his mother passed; that he never had any hatred or anger to America and Americans, he loved America and was happy to come here, and happy he came here; and that he had no association with any hate groups.

Hosam Smadi is 19 years of age. He did not leave Jordan until he was almost 17 years of age. The government asks the court to limit the defense to a single witness, Hosam Smadi's brother, with regard to the defendant's life, attitudes, upbringing in Jordan. The government can make the obvious argument's about the bias of a brother. Thus, additional witnesses are essential. These witnesses knew Hosam Smadi in different aspects of his life. A teacher, social worker, and doctor will likely not only be more persuasive, they would know facts the defendant's brother does not know, as well as corroborating the brother, all of which would be essential to the defense. When the issue is a young man's state of mind, it will never suffice to bring a single witness. Factual incidents matter more than generalizations, and the witnesses sought will add that much needed evidence. Some of the witnesses sought remained in contact with the defendant and can testify as to his state of mind with regard to the offense after Hosam Smadi came to the United States, and was no longer living near his brother. Thus, though some of the evidence might overlap and be on the same theme, the witnesses sought will provide different, material evidence than did Hussein Smadi.

The government suggests that Smadi could call his father as a witness rendering cumulative, in their opinion, the witnesses Smadi seeks to depose. First, the government is in no position and has no authority to determine for the defense who best to call as a witness. Second, it is understood that Mr. Maher Smadi's visa allowing him to come to the United States expires prior to the trial setting in this case. Third, as with Hussein, it is easily foreseeable that the government will argue that Maher Smadi, as the father of Hosam Smadi, is biased. Fourth, Maher Smadi, like Hussein Smadi, does not

-8-

know every aspect of Hosam Smadi's life, hence the need for additional witnesses.

The government argues that the defense can provide evidence of mental health issues to the defendant's mental health expert, and thus does not need to present this evidence to the jury. But Smadi needs to present this evidence to the jury, not just to the expert. The jury, not the defense's expert, will need to hear and evaluate the evidence as it is the jury that will decide the ultimate issues. Furthermore, it is anticipated the mental health evidence will be relevant to the defendant's mental state on issues beyond the purview of the expert such as possible defenses of entrapment (lack of predisposition), positional entrapment (lack of means to commit the offense), knowledge and intent.

The witnesses have material evidence, are not cumulative, and the defense should be able to present them to the jury.

D. <u>Obtaining the documents.</u>

The government asserts Smadi should rely upon treaties or formal letters of request to obtain sought after documents. Jordan is not a signatory to any treaty that would assist Smadi in obtaining the records. The State Department's web site advises this would be unwise to attempt to obtain the documents through letters rogatory, and Smadi has attempted, without success to date, to obtain the documents through letters of request.

According the State Department's web, site"Jordan is not a party to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters nor is Jordan a signatory to any international convention pertaining to judicial assistance."[3] Moreover,

---

[3] http://travel.state.gov/law/info/judicial/judicial_675.html (a copy is attached as Exhibit B)

"[t]he use of letters rogatory to effect service of process in Jordan is not generally encouraged since it can take more than a year to accomplish and local Jordanian authorities may be unfamiliar with the procedure and therefore reluctant to execute such a request."[4] On the other hand, the State Department advises that "[d]epositions of willing witnesses may be conducted in Jordan regardless of the nationality of the witness if they are to be used in a foreign country."[5] The witnesses contacted are willing witnesses, and it is anticipated those not yet contacted will be willing witnesses.

    D.  The deposition will comply with the law.

The defense proposes that the depositions be taken at the U.S. Embassy. Of course, all legal requirements for depositions will be followed, just as they were with the deposition of Hussien Smadi. As stated on the State Department's website:

> In the past, the Embassy has assisted private U.S. attorneys taking deposition by allowing them to use Embassy space and swearing in the participants. Depositions can take place at any location, including a hotel, office or the U.S. Embassy. The procedure for taking depositions does not vary in civil, commercial, administrative, domestic relations or criminal cases if the deposition is to be used in a court the United States.

The government expresses a concern that it would have no power to prosecute witnesses for perjury if the government decides the witnesses have testified falsely. Even if that were true, (and the government has provided no citation to any authority supporting its position), this does not mean the witnesses would not be under oath and under penalty of perjury. The government would simply be in the same position as the defendant vis a vis the government's witnesses and/or any party in a civil matter, none of whom have the unilateral power to prosecute the others' for perjury.

---

[4] Id.

[5] Id.

WHEREFORE, PREMISES CONSIDERED, it is respectfully prayed that this Court order the taking of depositions of defense witnesses in the presence of the representatives of the Government and representatives of the defense team, by certified court reporters and videographers in Amman, Jordan during the week of March 22, 2010, March 29, 2010, or the week of April 5, 2010.

Respectfully submitted,

*/s/ Richard A. Anderson*
RICHARD A. ANDERSON
Federal Public Defender
Northern District of Texas
Texas Bar #01207700
525 Griffin Street, Suite 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 fax
richard_anderson@fd.org
Attorney for Hosam Maher Husein Smadi


*/s/ Peter Fleury*
PETER FLEURY
Assistant Federal Public Defender
Northern District of Texas
Texas Bar #07145600
819 Taylor St., Rm 9A10
Fort Worth, TX 76102
(817) 978-2753
peter_fleury@fd.org
Attorney for Hosam Maher Husein Smadi

## **CERTIFICATE OF SERVICE**

      I, Richard Anderson, hereby certify that on February 19, 2010, a copy of the foregoing motion was hand delivered to the United States Attorney's Office at 1100 Commerce St., Dallas, Texas 75242.

                                        /s/ Richard A. Anderson
                                        Richard A. Anderson
                                        Federal Public Defender

# EXHIBIT B

(State Department advisory found at: http://travel.state.gov/law/info/judicial/judicial_675.html#)